IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN W. WILLIAMS,

    Plaintiff,               No. CIV S-07-0752 WBS KJM P

    vs.

JAMES WALKER, et al.,        ORDER AND

    Defendants.           FINDINGS AND RECOMMENDATIONS

/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that defendant Leiber ordered defendant Holmes to bar plaintiff from C facility and made a deal with defendant Baughman to rehouse plaintiff on B Facility in retaliation for plaintiff's legal activity. Amended Complaint (Am. Compl.) ¶ 20. Defendant Holmes then housed plaintiff on B Facility with gang members. Id. ¶ 21. Later, defendant Baughman left plaintiff in a holding cell for a long time and refused to summon medical help for him and ultimately refused to transfer plaintiff to another facility where he could receive better mental health services. Id. ¶¶ 37, 54.

        Plaintiff avers that defendants Lopez, Ramos, Leach and Mendoza ignored his suicidal gestures after Ramos had plaintiff put in segregation on a trumped-up charge and that defendant Mendoza destroyed some of plaintiff's property and then locked plaintiff in a holding

1

cage in retaliation for plaintiff's legal activities and conversations about the code of silence. Id. ¶¶ 25, 27, 28, 31, 39.

Plaintiff claims that defendant Crane vandalized plaintiff's cell and confiscated his stamps in retaliation for plaintiff's threat to file a grievance against Crane. Id. ¶ 43. Finally, plaintiff contends that defendant Cantu falsified the results of a disciplinary hearing in order to conceal the misbehavior of other correctional officers. Id. ¶ 52.

Defendants Baughman, Leiber, Ramos, Link-Lopez, Mendoza, Crane and Cantu have filed a motion to dismiss, arguing that plaintiff did not complete the process of exhausting administrative remedies before filing suit.

I. Exhaustion Under The Prison Litigation Reform Act

The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2); Smith v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002). Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Woodford v. Ngo, 548 U.S. 81, 90 (2006). However, an inmate is required to exhaust those remedies that are available; for a remedy to be "available," there must be the "possibility of some relief. . . ." Booth, 532 U.S. at 738. The grievance process must be completed before the inmate files suit; exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address an inmate's claims. See Cal. Code Regs.

tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5.

Finally, to satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint. Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"); Brown v. Sikes, 212 F.3d 1205, 1209 (11th Cir. 2000) (1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process).

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. Defendants bear the burden of proving plaintiff's failure to exhaust. Id. at 1119.

Defendants argue the exhibits attached to the amended complaint show that plaintiff had not secured Director's Level decisions on grievances raising the claims presented in the amended complaint until after he filed his initial complaint in the Northern District. Plaintiff counters that his initial filing in the Northern District was not a complaint, but rather was a "report of violation of federal civil law, and request for federal investigation," and that he sent a copy to the Honorable Thelton Henderson, not seeking judicial review, but because plaintiff "was under the impression that Judge The Honorable Thelton Henderson was responsible for exercising responsibility and authority over federal criminal claims . . . ." Opposition (Opp'n) at 3-4. He argues administrative remedies were exhausted by the time he filed his amended complaint in this court. Defendants have not filed a reply to plaintiff's opposition and so have not addressed the question it raises.

/////

II. Plaintiff's Use Of The Grievance Process

    A.  Grievance 06-01982

Plaintiff filed a grievance complaining that defendants Baughman, Ramos and Medina used false information to put him in segregation. In addition, defendants Ramos, Medina and Lopez ignored his mental health concerns. Docket No. 8 at 60-62.[1] He received a Director's Level decision on this grievance on May 30, 2007.

    B.  Grievance 06-02200

In this grievance, plaintiff alleged that defendant Mendoza damaged some of his personal property. Docket No. 8 at 74-76. He received a Director's Level decision on May 21, 2007.

    C.  Grievance 06-02498

Plaintiff filed this grievance to complain that defendant Mendoza taunted him, threatened to fight him "old school," and placed him in a holding cage for a long period of time. In addition, he claimed that defendants Rios and Mendoza ignored his pain and request for medical treatment while he was in the holding cage and told him they would leave him in the cage so long as he talked "law and . . . the code of silence." Finally, he alleged that defendant Baughman approved of Rios' "plans" for plaintiff. Docket No. 8 at 94-97. The Director's Level decision on this grievance is dated May 17, 2007. Id. at 91.

    D.  Grievance 07-00716

In this grievance, plaintiff accuses defendant Cantu of falsifying the account of a disciplinary hearing over which he presided and defendant Baughman of orchestrating the "Green

---

[1] Docket Nos. 8 and 8-2 are the amended complaint and its more than two hundred pages of exhibits, many of which are duplicates. In addition, a few of the exhibits relate to incidents that involve correctional officers who are not mentioned in the amended complaint while others concern incidents the court did not find stated a claim under the civil rights act.
    Although the exhibits have been assigned letters, they are not paginated and each is comprised of several pages. For ease of reference, the court refers to the page numbers assigned to these attachments by the court's CM/ECF system.

Wall prison gang code of silence" and the actions taken against plaintiff. Docket No. 8 at 156-158. He received the Director's Level denial of this appeal on October 3, 2007. Id. at 154.

E. Grievance No. 07-00265

Among the claims included in this grievance is plaintiff's account of defendant Crane's retaliatory search of plaintiff's cell, which included acts of vandalism against plaintiff's personal property. Docket No. 8-2 at 4-7. The Director's Level denial of this grievance is dated August 10, 2007. Id. at 2.

III. The Instant Litigation

Plaintiff sent a letter dated March 7, 2007 to the FBI, Correctional Captain M. Overstreet at the California Department of Corrections and Rehabilitation (CDCR), The Honorable Thelton Henderson, United States District Court for the Northern District of California, and Attorney Claudia Center at the Employment Law Center of the Legal Aid Society in San Francisco. Docket No. 1 at 5-8. The subject line of this letter reads:

> A 1964; 1985 Civil Rights Complaint Against The California Department of Corrections & Rehabilitation New Folsom State Prison Official(s) Warden James Walker, Associate Warden Reyes, Correctional Captain Baughman, et al., For Green Wall Organized Criminal Activity

In the first paragraph of the letter, he continues:

> This 1964; 1985 Civil Rights Complaint is being filed pursuant to United States Code Title 18, Section(s) 241; 242; & 245, against the above named prison officials who are alleged to be, and operate as organized criminals and green wall gang members in disguise as correctional peace officers operating under the code of silence while hiding behind the color of State law and using State grounds as headquarters to practice and base their criminal operations.

Id. at 5. In the body of the document, plaintiff describes a campaign of harassment, retaliation and conspiratorial activities directed against him as the result of his attempts to expose the activities of the "Green Wall." He also describes a number of other events, all of which stem, he alleges, from Green Wall activities and names several officers who also figure in his amended complaint – Baughman, Ramos, Rios and Cantu – as well as several who do not. While plaintiff

5

does list some actions taken against him, he also includes the officers' alleged actions against other staff members. Docket No. 1 at 6. He does not ask for any specific action to be taken or that any relief be afforded to him. Id. at 6.

The Northern District filed the letter as a civil rights action and sent plaintiff a notice advising him to file an application to proceed in forma pauperis or pay the filing fee. Williams v. Walker, Civ. No. 07-1433 JSW (N.D. Cal.) (Docket No. 2).[2] Plaintiff returned his application to proceed in forma pauperis, supported by a certified copy of his prison trust account statement, as required by 28 U.S.C. § 1915(a)(2). Id., Docket No. 3; see also Docket No. 2 (this case, same document). The Northern District then transferred the action, which it continued to characterize as a "civil rights action challenging the actions of prison officials at New Folsom State Prison . . . ." Williams v. Walker, Civ. No. 07-1433 JSW (N.D. Cal.) (Docket No. 4 (order of transfer)); see also Docket No. 1 at 2-3 (this case, same document).

This court treated the case as a civil rights action as well and on April 19, 2007, issued a packet of documents to plaintiff, which included a form for consenting to the magistrate judge's jurisdiction. The packet was accompanied by a notice that described the role of the magistrate judge to "conduct any or all case dispositive proceedings in this action, including motions to dismiss, motions for summary judgment, a jury or nonjury trial and entry of a final judgment." Also included was a digest of some of the local rules on the requirements of proper pleadings. Docket No. 3. These were contained in a letter addressed "Dear Litigant," which said "you are hereby informed that the above case number has been assigned to your action. You are to include the complete case number on all documents sent to the court. . . . " Plaintiff returned the consent form on May 2, 2007. Docket No. 4.

On October 3, 2007, this court granted plaintiff's application to proceed in forma pauperis, characterized plaintiff's letter as a complaint, and dismissed the complaint with leave to

---

[2] The court's file does not contain a copy of this document, but its contents are summarized in the docket text.

file an amended complaint, observing that the letter/complaint did not contain the short and plain statement of the claims as required by Federal Rule of Civil Procedure 8(a)(2). Docket No. 6 at 3.

Plaintiff returned a pleading he called "Motion For Leave To File An Amended Complaint For Declaratory and Injunctive Relief," which was filed on October 22, 2007; the proof of service is dated October 16, 2007. Docket Nos. 8 at 1 & 8-2 at 134.

IV. Analysis

In McKinney, 311 F.3d at 1199, the Ninth Circuit joined a number of other circuits in holding that an inmate could not satisfy the exhaustion requirement of the PLRA unless he had completed the exhaustion process "before filing suit." The Ninth Circuit has also identified the time at which suit is "brought" within the meaning of the Prison Litigation Reform Act:

> The word "brought" properly focuses attention on what the prisoner-plaintiff does. The complaint is "brought" by the prisoner when he submits it to the court. Accordingly, the prisoner must have entirely exhausted administrative remedies at this point. As the Seventh Circuit observed, Congress may have selected the word "brought," rather than "filed" or "commenced" to underscore its objectives in enacting the PLRA.

Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006). The Seventh Circuit has taken a similar approach:

> Only equating "brought" with "got under way" or some similar phrase ensures that the litigation does not start until the administrative process has ended. Ford launched the suit while the administrative process was ongoing and then told the Board to go fly a kite. He thought that mailing the complaint to the court was enough to bring suit; we hold, that for purposes of § 1997e(a), it was. Otherwise the statute cannot work.

Ford v. Johnson, 362 F.3d 395, 399 (7th Cir. 2004). While these cases explain that administrative remedies must be exhausted before the complaint is submitted to the court, they do not examine the precise question presented by this case.

/////

To determine whether plaintiff exhausted his remedies "before filing suit," the court must first determine whether plaintiff's letter dated March 7 and filed in the Northern District on March 13, 2007, constitutes a complaint. See Fed. R. Civ. P. 3 ("a civil action is commenced by filing a complaint with the court"); Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1094 (10th Cir. 2005) ("Traditionally, a cause of action is commenced when it is first brought in an appropriate court. . . . "). A complaint "must contain, inter alia, a 'short and plain statement of the claim showing the pleader is entitled to relief," Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149 (1984), so as to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). In addition, a complaint must also include "a demand for judgment for the relief the pleader seeks." In re Marino, 37 F.3d 1354, 1357 (9th Cir. 1994) (document that did not request relief not deemed a complaint); see generally Fed. R. Civ. P. 8(a)(2).

In Baldwin County Welcome Center, the Supreme Court considered whether something other than a formal pleading could constitute a complaint and thus the commencement of an action so as to meet the filing deadline for an employment discrimination action. In that case, the plaintiff timely filed the right-to-sue letter issued by the EEOC; the Court found it did not meet the requirements of Rule 8 because it did not contain a statement of the factual basis for the claim of discrimination. 466 U.S. at 149. The Court recognized that plaintiff had filed an additional letter describing the basis of her claim, but did not deem it to be a complaint because "there is nothing in the record to suggest the letter was considered by the District Court or the Court of Appeals, and Brown does not rely upon it in this Court as a basis for affirming the judgment." Id. at 150 n.4. However, in Schlesinger v. Councilman, 420 U.S. 738 (1975), the Court observed without apparent disapproval that a district court had found that "motions for a temporary restraining order and a preliminary injunction and supporting affidavits and

/////

/////

briefs–although not formally denominated a complaint, were adequate to advise petitioners of the nature of the claim and the relief sought and to invoke jurisdiction of the court. . . ." Id. at 742 n.5.

Appellate and district courts before and after Welcome Center have considered whether unusual pleadings might be deemed complaints, sufficient to stop the running of statutes of limitations. Thus, in Brady v. Bristol-Myers, Inc., 332 F.Supp. 995 (D. Mo. 1971), rev'd on other grounds, 459 F.2d 621 (8th Cir. 1972), the court found that the action had not been timely commenced when plaintiff, with assistance of counsel, filed a letter asking that it be deemed a complaint, along with a memo from counsel for the EEOC, the right to sue letter, an application to proceed in forma pauperis and a request for the appointment of counsel. See also McCall-Bey v. Franzen, 777 F.2d 1178, 1191 (7th Cir. 1985) (court doubts whether inmate's letter could be deemed a complaint). In contrast, in Huston v. General Motors Corporation, 477 F.2d 1003 (8th Cir. 1973), the court found a request for the appointment of counsel for employment discrimination action "constitutes the bringing of the civil action," in part because of the difficulties a layman would encounter in attempting to prepare a complaint in the short time period following the issuance of a right to sue letter. But see Murphy v. Foster, 518 F.Supp.2d 292 (D. Me. 2007) (filing of emergency writs of replevin and prohibition did not constitute a complaint). In Goldsmith v. City of Atmore, 996 F.2d 1155, 1161 (11th Cir. 1993), the court found that despite the liberal interpretation to be given to lay pleadings, it could not deem a signed memorandum a complaint even though it described the factual basis of the plaintiff's claims because it did not include "'a demand for judgment for the relief the pleader seeks.'" But see Dupree v. Lubbock County Jail, 805 F.Supp. 20 (N.D. Tex. 1992) (court would interpret lay pleading without a request for specific relief as a request for injunctive relief).

Two other cases bear examination. First, in Pearson v. Gatto, 933 F.2d 521 (7th Cir. 1991), the plaintiff, a prisoner proceeding pro se, wrote to the court after receiving a ruling on the defendants' motion to dismiss, noting his surprise that the court had apparently not

received his amended complaint and his awareness that the statute of limitations was soon to run out. In this letter, he "provided a complete factual summary of the events that constituted the basis for his suit, including names (as many as he knew), dates, and the facts constituting the basis of his claim." The Court of Appeals concluded that "under the circumstances of this case the district court should have broadly construed Pearson's letter . . . to be an amended complaint." Id. at 527.

In Diaz v. City of Miami Beach, 845 F.Supp. 869 (S.D. Fl. 1993), the plaintiff timely filed a number of documents, including "a dossier of allegations, correspondence, and testimonials establishing a *prima facie* case of unlawful discrimination. . . ." The defendant moved to dismiss the action, arguing that the action was not timely because the original filing did not constitute a complaint. The district court rejected this position because the detail in the filings gave the defendant "fair notice of the charges against it" and because the "dossier of documents . . . had been treated as a complaint. . . .". Id. at 871.[3]

All of these cases consider whether a document may be deemed a complaint, thus commencing an action, in the context of challenges to the timeliness of the underlying actions. In addition, many of these cases rely on the duty to interpret lay pleadings liberally so as to save an action from dismissal and on the admonition that "pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). However, "liberal" construction in this case would not aid the lay plaintiff, for it would result in a finding that he filed his action before he had completed the exhaustion of administrative remedies. The court has found no case addressing the exact question presented here: was this action commenced when plaintiff's letter was filed in the Northern District or when his amended complaint was filed in this district for purposes of determining whether plaintiff had exhausted state remedies before filing suit?

/////

---

[3] The court ultimately dismissed the case because plaintiff had not served the defendant in a timely fashion.

Several factors suggest that the letter in this case should be deemed a complaint: it does style itself a "civil rights complaint" and invokes the court's jurisdiction under two civil statutes: 42 U.S.C. § 1985 (conspiracy to interfere with civil rights) and 18 U.S.C. § 1964 (civil actions for RICO violations). Plaintiff describes a series of actions taken against him, names those responsible, and provides the dates of several of the activities. In addition, plaintiff returned various documents relating to his action -- his application to proceed in forma pauperis and the consent to proceed before the Magistrate Judge -- before the amended complaint was filed and did not protest when each court referred to the letter as a complaint or assigned a case number to the document. Finally, judges in both the Northern District and this court treated the letter as a complaint and plaintiff did not challenge this characterization. Cf. United States v. Black, 356 F.Supp. 366 (W.D.N.Y. 1973) ("The category in which the Clerk files a paper is, however, not necessarily determinative of the nature of the proceeding to which the paper pertains."). Moreover, construing the original letter filed in the Northern District as a complaint arguably would "do justice," for such a construction would serve the purpose underlying the PLRA's exhaustion requirement, which is to provide "the prison grievance system . . . a fair opportunity to consider the grievance." Woodford v. Ngo, 548 U.S. at 94.

On the other hand, plaintiff has submitted his declaration, averring he "did not make such report for redress of grievance or for purpose of filing lawsuit, as my March 7, 2007, complaint and information was report of federal criminal violations occurring on state grounds," and that he had "always believed that Judge T. Henderson was in charge over all matters involving the infamous code of silence being practiced by correctional officials" and so sent the letter personally to Judge Henderson rather than to the court. Opp'n at 7, ¶¶ 2-3. Several aspects of the letter itself support this interpretation: in the body of the letter, plaintiff relies on three criminal statutes, 18 U.S.C. §§ 241, 242 and 245, which proscribe conspiracy against and deprivation of civil rights. In addition, plaintiff does not ask for any specific relief or the entry of
/////

1 judgment. Moreover, the letter is addressed first to the FBI, then to Judge Henderson by name, a
2 supervisor in the CDCR, and a Legal Aid attorney.

3         Nevertheless, the court finds plaintiff's initial silence and acquiescence to be more
4 probative than his declaration submitted now, in response to defendants' motion. On the day
5 plaintiff's letter was filed in the Northern District, that court sent plaintiff the necessary forms for
6 filing a request to proceed in forma pauperis, a form which plaintiff returned promptly. Plaintiff
7 did not protest at that time that he simply wanted Judge Henderson to investigate criminality at
8 the prison even when he knew that money would be deducted from his prison trust account to
9 pay the filing fee for the action. See Docket No. 2 ("I consent to prison officials withdrawing
10 from my account and paying to the court the initial partial filing fee and all installment payments
11 required by the court"). He did not demur when he received Judge White's order transferring
12 what the judge clearly characterized as a "civil rights action," or when he received this court's
13 packet of documents, which again referred to "the action" and provided a summary of the local
14 rules essential to successful litigation. Instead, he returned the form consenting to this court's
15 jurisdiction over "all further proceedings in this case, including trial and entry of judgment. . . ."
16 Docket No. 4. His current claim – that the letter was simply a notice of wrongdoing rather than
17 the commencement of a civil action – does not overcome the evidence to the contrary. Cf.
18 Risetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597 (9th Cir. 1996) (discussing judicial
19 estoppel).

20         The court finds that plaintiff's letter to the Northern District initiated an action
21 within the meaning of the Prison Litigation Reform Act; plaintiff thus was required to have
22 completed the exhaustion of administrative remedies beforehand. His failure to complete the
23 exhaustion requirement means this action must be dismissed.

24 V. Other Matters

25         Plaintiff has filed a document he calls "ex parte motion and request for disposition
26 of dispute regarding exhaustion of administrative remedies and for leave to file second amended

complaint within thirty days." Docket No. 18. Plaintiff's motion is not, however, accompanied by a proposed amended complaint. As a litigant proceeding in forma pauperis, plaintiff's pleadings are subject to evaluation by this court pursuant to the in forma pauperis statute. See 28 U.S.C. § 1915. Because plaintiff did not submit a proposed amended complaint, the court is unable to evaluate it. Plaintiff's motion for leave to amend must therefore be denied.

IT IS THEREFORE ORDERED that plaintiff's motion for leave to file an amended complaint is denied.

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (docket no. 15) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 3, 2009.

_____
U.S. MAGISTRATE JUDGE

2

will0752.57